SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. James R. Denelsbeck (A-42-14) (075170)**

**Argued October 26, 2015 – Decided May 12, 2016**

**CUFF, P.J.A.D. (temporarily assigned), writing for a majority of the Court.**

In this appeal, the Court considers whether a defendant is entitled to a jury trial when facing a third or subsequent driving while intoxicated (DWI) charge pursuant to N.J.S.A. 39:4-50.

Defendant James R. Denelsbeck was stopped by police for failing to stop at a red light. When defendant did not satisfactorily perform field sobriety tests, he was arrested. An Alcotest machine later indicated that defendant's blood alcohol content was .12 percent. Defendant was issued a motor-vehicle summons for DWI, careless driving, and failure to observe a traffic signal.

Defendant, who had three prior DWI convictions, filed a demand for a jury trial in municipal court. The prosecutor advised that the State would not seek more than 180 days' incarceration. The court denied defendant's request, and, after a bench trial, found him guilty of DWI and failure to observe a traffic signal. In light of defendant's prior convictions, he was sentenced, on the DWI conviction, to a mandatory 180-day jail term, as well as a ten-year driver's license suspension followed by two years of using an ignition interlock device, twelve hours in the Intoxicated Driver Resource Center (IDRC), $1006 in fines, and over $350 in surcharges, costs, and fees.

Defendant appealed, and the Law Division affirmed the denial of his request for a jury trial, as well as his convictions and sentence. Defendant then appealed solely on the issue of his right to a jury trial. The Appellate Division affirmed. Relying on this Court's decision in State v. Hamm, 121 N.J. 109 (1990), cert. denied, 499 U.S. 947 (1991), the panel concluded that DWI in New Jersey is not a criminal offense. Based on "well-settled authority," it further noted that DWI offenders facing a prison term of six months or less are not entitled to a jury trial. The panel found that defendant did not face any real risk of receiving a prison term greater than 180 days, and that the other penalties and fines he faced were not sufficiently onerous to trigger his right to a jury trial. This Court granted defendant's petition for certification. 220 N.J. 575 (2015).

**HELD:** Third or subsequent DWI offenders are not entitled to a jury trial, and defendant's conviction procured by a bench trial did not violate his Sixth Amendment right to a jury trial.

1. The Sixth Amendment of the United States Constitution, which is applicable to the states by the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]" U.S. Const. amend. VI. Despite the amendment's broad language, it has long been held that "petty" offenses may be tried without a jury. In order to determine whether the right to a jury trial attaches in a particular case, the relevant inquiry is whether the case involves a "petty" or "serious" offense. The United States Supreme Court has held that no offense can be considered "petty" if imprisonment for more than six months is authorized. Where a defendant faces less than six months' incarceration, the Court advised that it would look to both the nature of the offense, as well as the maximum potential sentence, in determining whether a jury trial was warranted, with the most relevant information being the severity of the maximum authorized sentence. In Blanton v. North Las Vegas, 489 U.S. 538 (1989), the Court explained that, in rare cases, a defendant facing a prison term of six months or less will be entitled to a jury trial if able to demonstrate that additional statutory penalties are so onerous as to indicate a legislative determination that the offense is "serious." (pp. 8-12)

2. The New Jersey Constitution also provides a right to trial by jury. Given the similar language in the state and federal constitutions, the Supreme Court of New Jersey has long looked to the federal standard to determine the scope of this right. In Hamm, supra, the Court explained that federal principles provide the framework for analyzing the question of whether the Legislature has rendered the offense of DWI "serious" for Sixth amendment purposes. At the time the Court decided Hamm, a third or subsequent DWI offender was subject to 180 days' incarceration, which could be served by completing a 90-day community service sentence and a combination of inpatient and outpatient treatment. The offender also faced a ten-year license suspension and various fines and surcharges. In determining that this penalty scheme did not trigger the right to trial by jury, the Court noted that the law focused on

prevention over punishment, carried a shorter sentence than that imposed in many other states, and did not require a sentence in excess of six months' incarceration. The Court determined that the additional penalties beyond incarceration did not indicate that the Legislature considered the offense "serious." (pp. 12-16)

3. Following a series of amendments in 2004, third or subsequent DWI offenders now face a mandatory imprisonment term of not less than 180 days, with no allowance for noncustodial alternatives. N.J.S.A. 39:4-50(a)(3). In addition to the ten-year license suspension, which was part of the penalty scheme considered in Hamm, offenders also are now required to install an ignition interlock device following the conclusion of the suspension period and must pay an additional $251 in fines, fees, assessments, and surcharges. Offenders also may be subject to penalties, including confinement, for failing to meet obligations arising from a DWI conviction, such as up to 90 days' imprisonment for driving on a suspended license. (pp. 16-21)

4. As in Hamm, the Court applies the federal standard to this case. It begins its inquiry with the most relevant indication of the seriousness of an offense – the severity of the authorized penalty. While the current mandatory nature of the term of imprisonment, emphasizing confinement rather than treatment, is a modification of the penal aspect arising from a third or subsequent DWI conviction, it does not lengthen the potential term of confinement beyond 180 days. Here, despite the two 15-day jail terms carried by defendant's other offenses, the Court is not persuaded that he faced more than 180 days' incarceration since he was assured that he would not be sentenced to a longer term. Any related sentences for failure to meet obligations arising from the DWI conviction are too attenuated to affect an offender's direct exposure to incarceration. (pp. 21-25)

5. Because defendant did not face over six months of confinement, the Court presumes the DWI offense to be "petty." It next turns to the question of whether this is, under Blanton, the rare situation where a legislature has so packed an offense with additional penalties that it is deemed "serious." Although deprivation of a license to drive is clearly a significant consequence, the Court reaffirms its conclusion in Hamm that the ten-year license suspension does not reflect a significant escalation of the seriousness with which the Legislature regards this offense, but rather a shifting social conclusion about what works best with DWI offenders. Likewise, the new requirement of installation of an ignition interlock device, while an inconvenience, is preventative rather than punitive and not so onerous as to escalate the offense to a "serious" one. With respect to the fees, fines, and assessments facing a repeat DWI offender, only $1050 can be attributed to criminal penalties, an amount which would constitute a "petty" fee under Blanton. While the remaining civil penalties amount to $5931, more than the $5000 penalty deemed "petty" under federal law, this is not dispositive in regard to the right to a jury trial. Strict adherence to a set amount would overlook the context of a monetary penalty, including that it is subject to inflation. The remaining penalties and fees, including those to which an offender is subject for failure to meet obligations arising from the DWI conviction, are too attenuated to be relevant to the issue before the Court. (pp. 25-30)

6. The Court acknowledges that every other state appears to afford jury trials for at least some DWI offenses, but explains that the significance of any apparent uniformity in state practices can be belied by the context and nuances of each jurisdiction. Unlike many other states, the New Jersey Legislature has resisted criminalizing DWI offenses, opting instead to increase the severity of the penalties focused on prevention and deterrence. That being said, the Legislature has reached the outer limit in subjecting third and subsequent DWI offenders to confinement without a jury trial, and any additional direct penalties will render such offenses "serious" offenses for the purpose of triggering the right to a jury trial. Until that time, particularly given that the total term of potential confinement does not exceed six months, the Court is satisfied that the current penalty scheme is within the confines of Sixth Amendment precedent. Thus, third or subsequent DWI offenders are not entitled to a jury trial, and defendant's conviction procured by a bench trial did not violate his Sixth Amendment right to a jury trial. (pp. 30-34)

The judgment of the Appellate Division is **AFFIRMED**.

**JUSTICE ALBIN, DISSENTING,** expresses the view that the additional penalties for third and subsequent DWI offenders imposed by the Legislature since Hamm, including a mandatory custodial term, have breached the constitutional threshold, thereby requiring the Court to confer on these offenders the fundamental right to a jury trial that is guaranteed by the Sixth Amendment and guaranteed in every other state and the District of Columbia.

**CHIEF JUSTICE RABNER, and JUSTICES LaVECCHIA, PATTERSON, and SOLOMON join in JUDGE CUFF's opinion. JUSTICE ALBIN filed a separate dissenting opinion. JUSTICE FERNANDEZ-VINA did not participate.**

2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

      v.

JAMES R. DENELSBECK,

    Defendant-Appellant.


        Argued October 26, 2015 – Decided May 12, 2016

        On certification to the Superior Court,
        Appellate Division.

        John Menzel argued the cause for appellant.

        Brett Yore, Assistant Prosecutor, argued the
        cause for respondent (James P. McClain,
        Atlantic County Prosecutor, attorney;
        Deborah A. Hay, Assistant County Prosecutor,
        on the letter brief).

        Alexander R. Shalom argued the cause for
        amicus curiae American Civil Liberties Union
        of New Jersey (Edward L. Barocas, Legal
        Director, attorney).

        Jeffrey Evan Gold argued the cause for
        amicus curiae New Jersey State Bar
        Association (Miles S. Winder III, President,
        attorney;(Paris P. Eliades, of counsel; Mr.
        Gold, Barbara E. Ungar, and Justin M. Moles,
        on the brief).

        Sarah Lichter, Deputy Attorney General,
        argued the cause for amicus curiae Attorney
        General of New Jersey (John J. Hoffman,
        Acting Attorney General, attorney).

JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

In this appeal, we consider whether a defendant is entitled to a jury trial when facing a third or subsequent driving while intoxicated (DWI) charge pursuant to N.J.S.A. 39:4-50. This Court previously answered that question in the negative, over twenty-five years ago, in State v. Hamm, 121 N.J. 109, 130 (1990), cert. denied, 499 U.S. 947, 111 S. Ct. 1413, 113 L. Ed. 2d 466 (1991). Since then, however, the Legislature has amended the DWI statute to include additional penalties. As such, we now apply our analysis from Hamm to determine whether the current version of the law requires a different outcome.

At the time Hamm was decided, third or subsequent DWI offenses were punishable by several thousand dollars in fees, surcharges, and assessments, a ten-year driver's license suspension, and 180 days' confinement, which could be served through community service and outpatient treatment. Today, a third or subsequent offender faces an additional $251 in fees, is subject to the same license suspension, must be confined for 180 days, and must install an ignition interlock device[1] in his

---

[1] An ignition interlock device is "a blood alcohol equivalence measuring device which will prevent a motor vehicle from starting if the operator's blood alcohol content exceeds a predetermined level when the operator blows into the device." N.J.S.A. 39:4-50.17(d).

vehicle for one to three years. The municipal court in this case held that this new scheme did not implicate the right to a jury trial, and the Law and Appellate Divisions agreed.

The critical issue in resolving this case is whether the DWI offense is "serious" or "petty" for purposes of the Sixth Amendment. In answering that question, the primary focus is on the potential term of incarceration; specifically, whether it exceeds six months. A secondary consideration, but one which may render an offense "serious" regardless of the term of confinement, is the additional penalties imposed, including fines and fees.

In weighing those factors, we conclude that third or subsequent DWI offenders do not face more than six months' incarceration and that the additional penalties, although significant, are not sufficiently serious to trigger the right to a jury trial. At the same time, we emphasize that the Legislature has reached the outer limit of what is permitted without a jury trial and that any additional penalties would cause this Court to reach a different conclusion. Under the current law, however, we hold that the need for a jury trial is outweighed by the State's interest in promoting efficiency through non-jury trials.

I.

In the early morning hours of October 5, 2011, defendant

3

James R. Denelsbeck's vehicle was stopped by an officer of the Ventnor City Police Department for failing to stop at a red light. Defendant was arrested when he did not satisfactorily perform field sobriety tests. An Alcotest machine later indicated that defendant's blood alcohol content (BAC) was .12 percent.

Defendant was issued a motor-vehicle summons for DWI, N.J.S.A. 39:4-50; careless driving, N.J.S.A. 39:4-97; and failure to observe a traffic signal, N.J.S.A. 39:4-81. Defendant had three prior DWI convictions and therefore faced a mandatory term of 180 days' confinement, years of driving restrictions, and numerous fees, fines, and assessments. He also faced a maximum term of 15 days' confinement on each of the other driving offenses.

Defendant filed a demand for a jury trial in municipal court. In response, the prosecutor advised the court that the State would not seek more than 180 days' incarceration. After argument, the court denied the jury trial request. A bench trial commenced and the municipal court found defendant guilty of DWI and failure to observe a traffic signal. Defendant was acquitted of the careless driving charge.

Given defendant's prior convictions, he was sentenced to a mandatory term of 180 days in the Atlantic County Jail, pursuant to N.J.S.A. 39:4-50(a)(3). Defendant was also sentenced to a

4

ten-year driver's license suspension followed by two years of using an ignition interlock device, twelve hours in the Intoxicated Driver Resource Center (IDRC), $1006 in fines, and over $350 in applicable surcharges, costs, and fees. He was also charged $89 in fines and costs for failing to observe a traffic signal.

Defendant filed an appeal in the Law Division. After a de novo review, the Law Division affirmed the denial of defendant's request for a jury trial, as well as defendant's convictions and sentence. Defendant appealed solely on the issue of his right to a jury trial.

The Appellate Division affirmed in an unpublished opinion based on "well-settled authority" holding that DWI offenders facing a prison term of six months or less are not entitled to a jury trial. The panel specifically relied on this Court's decision in Hamm to conclude that DWI in New Jersey is "considered a motor-vehicle offense rather than a criminal offense." The panel also found that there was "nothing in the record to suggest that defendant faced any real risk of receiving a prison term greater than 180 days" and that "the additional fines, penalties, and surcharges defendant faced were not 'onerous' penalties triggering a right to a jury trial."

We granted defendant's petition for certification. State v. Denelsbeck, 220 N.J. 575 (2015).

5

II.

A.

Defendant's primary argument is that the Legislature has increased the severity of the penalties for third or subsequent DWI offenses since this Court's opinion in Hamm to the point that the right to a jury trial now applies. Specifically, defendant argues that the "packing" by the Legislature of numerous financial penalties, the ten-year driving privilege suspension, the ignition interlock device requirement, and the mandatory 180 days' confinement demonstrate that it now views third or subsequent DWI offenses as "serious" for purposes of the Sixth Amendment. Defendant also submits that he should have been granted a jury trial under the New Jersey Constitution.

The State argues that the amendments to N.J.S.A. 39:4-50(a) have not converted a third or subsequent DWI offense from a quasi-criminal motor-vehicle charge into a "serious" offense requiring a jury trial. The State emphasizes that the DWI offense remains classified as a motor-vehicle violation and that the maximum jail term has not changed since Hamm was decided. The State also contends that many of the penalties pre-date Hamm and that the few new penalties are either collateral or insufficiently onerous.

In addition, the State argues that the right to a jury trial was not triggered by defendant's offenses carrying an

6

aggregate term of imprisonment exceeding 180 days because the total penalty was limited to six months' incarceration under State v. Owens, 54 N.J. 153 (1969), cert. denied, 396 U.S. 1021, 90 S. Ct. 593, 24 L. Ed. 2d 514 (1970).  Lastly, the State offers a detailed rebuttal to defendant's argument that this case should be resolved under the New Jersey Constitution.

B.

Amicus curiae New Jersey State Bar Association (NJSBA) argues that the amended DWI statute requires a jury trial and notes that the vast majority of states currently allow jury trials for repeat DWI offenses.  In addition, the NJSBA argues that current precedent allowing a defendant to be tried without a jury on multiple "petty" offenses with aggregate sentences exceeding six months, as long as no more than six months' incarceration will be imposed, "improperly empowers the municipal prosecutor and judge to abrogate the defendant's right to a jury trial while still subjecting him to multiple charges." Lastly, the NJSBA provides practical guidance for applying the right to a jury trial to DWI offenses.

Amicus curiae American Civil Liberties Union of New Jersey (ACLU) also argues that the amended DWI statute triggers the right to a jury trial.  The ACLU cites many of the same factors and penalties as defendant, but also states that the IDRC requirements create an additional period of incarceration

7

because courts may sentence a defendant to a particular period of treatment and because failure to satisfy the IDRC requirements results in a two-day term of imprisonment.  Thus, the ACLU argues that the maximum penalty for third or subsequent DWI offenses is actually 182 days of confinement.

The Attorney General, appearing as amicus curiae, reiterates many of the arguments made by the State, including that DWI is not a criminal offense in New Jersey and that defendant has not offered a justification for departing from federal precedent.  In addition, the Attorney General argues that fines and collateral consequences do not factor into the Sixth Amendment analysis and that the principles of stare decisis weigh in favor of reaffirming Hamm.  The Attorney General also emphasizes that New Jersey has a legitimate interest in pursuing non-jury trials in DWI cases, and has submitted two charts detailing how other states treat DWI offenses and the right to a jury trial.

### III.

#### A.

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]"  U.S. Const. amend. VI.  That provision is applicable to the states by virtue of the Fourteenth Amendment.  See

8

*Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 1067-68, 13 L. Ed. 2d 923, 926 (1965).

Despite the broad language of the amendment, "it has long been the rule that so-called 'petty' offenses may be tried without a jury." *Frank v. United States*, 395 U.S. 147, 148, 89 S. Ct. 1503, 1505, 23 L. Ed. 2d 162, 166 (1969) (citations omitted). As such, to determine whether the right to a jury trial attaches, the relevant inquiry is whether the case involves a "petty" or "serious" offense. *Baldwin v. New York*, 399 U.S. 66, 68, 90 S. Ct. 1886, 1887-88, 26 L. Ed. 2d 437, 440 (1970).

The single bright-line rule that the United States Supreme Court has articulated in making this determination is that "no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized." *Id.* at 69, 90 S. Ct. at 1888, 26 L. Ed. 2d at 440. The Supreme Court has declined, however, to articulate a similar per se rule for cases involving a lesser period of confinement. *See id.* at 69 n.6, 90 S. Ct. at 1888 n.6, 26 L. Ed. 2d at 440 n.6 ("In this case, we decide only that a potential sentence in excess of six months' imprisonment is sufficiently severe by itself to take the offense out of the category of 'petty.'").

Rather, the Supreme Court has stated that when a defendant faces less than six months' incarceration, it will look to "both

the nature of the offense itself, as well as the maximum potential sentence, in determining whether [the] . . . offense was so serious as to require a jury trial." Ibid. (internal citations omitted). The "most relevant" information is the "severity of the maximum authorized penalty." Id. at 68, 90 S. Ct. at 1888, 26 L. Ed. 2d at 440.

At the same time, the Supreme Court has cautioned that "the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or 'petty' matter and may well result in quite serious repercussions affecting his career and his reputation." Id. at 73, 90 S. Ct. at 1890, 26 L. Ed. 2d at 443. Unlike in cases where the penalty exceeds six months' imprisonment, however, such "disadvantages, onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications." Ibid.

In Blanton v. North Las Vegas, the Supreme Court applied this analysis to conclude that a first-time DWI offense was "petty" for purposes of the Sixth Amendment. 489 U.S. 538, 539-40, 109 S. Ct. 1289, 1291-92, 103 L. Ed. 2d 550, 554-55 (1989). In doing so, the Supreme Court first explained that there was a presumption that the state legislature viewed the offense as "petty" because it authorized a maximum prison sentence of only six months. Id. at 544, 109 S. Ct. at 1293, 103 L. Ed. 2d at 557.

It also found that the inclusion of other penalties did not "clearly indicate[] that [DWI] is a 'serious' offense." Ibid. Specifically, the Supreme Court found a 90-day license suspension and completion of an alcohol abuse education course to be insignificant, id. at 544 n.9, 109 S. Ct. at 1294 n.9, 103 L. Ed. 2d at 557 n.9, and that a $1000 fine was "well below the $5,000 level set by Congress in its most recent definition of a petty offense[,]" id. at 544, 109 S. Ct. at 1293-1294, 103 L. Ed. 2d at 557. Nonetheless, the Supreme Court explained that relevant penalties are not limited "solely to the maximum prison term authorized for a particular offense" and that "[a] legislature's view of the seriousness of an offense also is reflected in the other penalties that it attaches[.]" Id. at 542, 109 S. Ct. at 1292, 103 L. Ed. 2d at 555.

As such, a defendant facing a prison term of six months or less will be entitled to a jury trial "if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." Id. at 544, 109 S. Ct. at 1293, 103 L. Ed. 2d at 556. Such a finding will occur only "in the rare situation where a legislature packs an offense it deems 'serious' with onerous penalties that nonetheless 'do not puncture the 6-month incarceration line.'"

11

Id. at 544, 109 S. Ct. at 1293, 103 L. Ed. 2d at 556-57 (citation omitted). Such situations are rare because although "[p]enalties such as probation or a fine may engender a significant infringement of personal freedom, . . . they cannot approximate in severity the loss of liberty that a prison term entails." Id. at 542, 109 S. Ct. at 1292, 103 L. Ed. 2d at 556 (internal quotations and citations omitted).

### B.

"A similar right to trial by jury is guaranteed under the New Jersey Constitution." State v. Stanton, 176 N.J. 75, 88, cert. denied, 540 U.S. 903, 124 S. Ct. 259, 157 L. Ed. 2d 187 (2003); see N.J. Const. art. I, ¶ 9 ("The right of a trial by jury shall remain inviolate[.]"); see also N.J. Const. art. I, ¶ 10 ("In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury[.]"). Due to the similar language in the federal and state constitutions, we have long looked to the federal standard to determine the scope of the right to a jury trial. See Owens, supra, 54 N.J. at 159-60 (citing Frank, supra, 395 U.S. at 147, 89 S. Ct. at 1503, 23 L. Ed. 2d at 162).

Indeed, in Hamm, supra, we described the issue of whether a DWI defendant has a right to a jury trial as primarily a question of federal constitutional law "because New Jersey has never recognized a right to trial by jury for the motor-vehicle

12

offense of DWI." 121 N.J. at 112. Thus, this Court explained that the federal principles "provide the analytical framework" for resolving the question of "whether the Legislature has so 'packed' the offense of DWI that it must be regarded as 'serious' for sixth-amendment purposes." Id. at 114-15.

We have also made clear, however, that trial by jury is relevant when a defendant faces several petty offenses that are factually related and arise out of a single event. Owens, supra, 54 N.J. at 163. "In such circumstances, the prosecutor (or the municipal court if there is no prosecutor) should offer the defendant a jury trial, and if such offer is not made, then the sentences may not total more than the maximum authorized for a petty offense." Ibid.

Applying the federal standard, this Court determined that the penalty scheme in effect when Hamm was charged with a third incident of DWI did not require a jury trial. Hamm, supra, 121 N.J. at 111. At that time, a third or subsequent DWI offender was subject to 180 days' incarceration that could be served by completing a 90-day community service sentence and a combination of inpatient and outpatient treatment. See L. 1986, c. 126, § 1. In addition, a third or subsequent DWI offender faced a ten-year driver's license suspension, ibid.; a fine of $1000, ibid.; an annual $1500 insurance surcharge for three years, L. 1988, c. 156, § 9; and $180 in other fees and charges, L. 1984, c. 126, §

13

1. The sentence imposed on Hamm, which consisted of ninety days' community service, twenty-eight days in an inpatient treatment program, and sixty days in an outpatient program, as well as the prescribed driver's license suspension, surcharges, and other financial assessments, fell well within the discretion afforded to a court at that time to craft a sentence that minimized the time of incarceration. Hamm, supra, 121 N.J. at 111.

In response to Hamm's argument that this penalty scheme classified a third DWI offense as "serious" rather than "petty," we noted that "when the New Jersey Legislature wants to treat an offense as 'serious,' there will be no mistaking it." Id. at 117. By way of example, we noted that the Legislature had imposed mandatory prison sentences of a year or more to address certain gun and drug offenses. Id. at 117-18. In contrast, we stated that for DWI, the Legislature "has yet to impose the full force of law on that offense that would denote a social evaluation that DWI is a 'crime' or an offense that equates with the need of trial by jury." Id. at 116. Specifically, we noted that the law focused on prevention over punishment, carried shorter sentences than those in many other states, and had "yet to require a sentence in excess of six months, or even to require a mandatory six months of incarceration." Ibid.

We then turned to the additional penalties, noting that the

14

$1000 fine would be regarded as "petty" under Blanton and that the other fees were civil in nature and therefore should be discounted. Id. at 117. The Court explained that "[t]he various rehabilitation and enforcement surcharges are reasonable in themselves" and that the increased insurance premiums were not specific to DWI offenses. Id. at 125. We also found that the insurance surcharge "was totally unrelated to any legislative intent to 'pack' the DWI offense" and that the collateral consequences attendant to DWI convictions are limited. Id. at 125-26.

We further stated in Hamm, that a license to drive is a necessity but that other licenses, including those to practice certain professions, may be lost without a jury trial. Id. at 124 (citation omitted). We also noted that the suspension, which previously existed, did not "reflect a significant escalation of the seriousness with which New Jersey's Legislature regards this offense, but rather a shifting social conclusion about what works best with DWI offenders." Id. at 124-25.

Finally, in Hamm, we discussed the Legislature's rehabilitative focus and described its decision to set a maximum penalty of 180 days' confinement as demonstrating "the undoubted legislative intention to continue to treat DWI as a motor-vehicle offense, not a crime." Id. at 127. We also stated that

15

"the provision of jury trial on a DWI charge by the majority of other states does not suggest the same result in New Jersey" due to the differences in offense structures and classification. Ibid.

We thus concluded that third or subsequent DWI offenses were not "serious" and did not require the option of a jury trial. Id. at 128-29. At the same time, however, we emphasized that this was "not an easy question" and that Blanton appears to suggest that "the closer the DWI system actually comes to the six-month incarceration line, the less room there may be for other penalties." Id. at 130.

IV.

N.J.S.A. 39:4-50(a) currently "prohibits the operation of a motor vehicle 'while under the influence of intoxicating liquor,' or 'with a [BAC] of 0.08% or more by weight of alcohol in the defendant's blood." State v. Revie, 220 N.J. 126, 133 (2014) (quoting N.J.S.A. 39:4-50(a)). The statutory scheme provides a tiered penalty structure for first, second, and "third or subsequent" DWI offenses, with increasing penalties for each additional offense. N.J.S.A. 39:4-50(a).

Following a series of amendments in 2004, a third or subsequent violator currently

> shall be sentenced to imprisonment for a term of not less than 180 days in a county jail or workhouse, except that the court may lower

16

> such term for each day, not exceeding 90 days, served participating in a drug or alcohol inpatient rehabilitation program approved by the [IDRC.]
>
> [N.J.S.A. 39:4-50(a)(3) (emphasis added).]

Thus, unlike the pre-2004 statute, the current law requires a third or subsequent DWI offender to be confined "either entirely in jail or partially in jail and partially in an inpatient facility" with "no allowance for noncustodial alternatives." State v. Luthe, 383 N.J. Super. 512, 514 (App. Div. 2006). The mandatory sentence of 180 days, however, has remained the same.

A third or subsequent DWI offender continues to face a driver's license suspension of ten years. N.J.S.A. 39:4-50(a)(3). That requirement has been in place since 1986 and was part of the penalty scheme considered by the Court in Hamm. Since Hamm, the Legislature has added an additional restriction in that third or subsequent DWI offenders "shall be required to install an ignition interlock device under the provisions of P.L. 1999, c. 417[.]" N.J.S.A. 39:4-50(a)(3). The device must be installed "in the motor vehicle principally operated by the offender during and following the expiration of the period of license suspension imposed[.]" N.J.S.A. 39:4-50.17(b). After the period of license suspension has ended, "the device shall remain installed for not less than one year or more than three years, commencing immediately upon the return of the offender's

17

driver's license after the required period of suspension has been served." Ibid.

Several financial penalties and assessments also apply to DWI offenders. Initially, there is a $1000 fine for a third or subsequent violation. N.J.S.A. 39:4-50(a)(3). There is also a $100 surcharge to support the Drunk Driving Enforcement Fund, N.J.S.A. 39:4-50.8; a $100 fee payable to the Alcohol Education, Rehabilitation and Enforcement Fund, N.J.S.A. 39:4-50(b); a $75 assessment for the Safe Neighborhoods Services Fund, N.J.S.A. 2C:43-3.2; a $50 assessment under N.J.S.A. 2C:43-3.1(c); a $100 DWI surcharge under N.J.S.A. 39:4-50(i);[2] and an insurance surcharge of $1500 per year for three years for third or subsequent DWI offenses occurring within a three-year period, N.J.S.A. 17:29A-35(b)(2)(b). A total of $6 is also added to every motor-vehicle violation fine. N.J.S.A. 39:5-41(d)-(h).

The $1000 fine, L. 1986, c. 126, § 1; the $100 surcharge for the Drunk Driving Enforcement Fund, L. 1984, c. 4, § 1; and the annual $1500 insurance surcharge, L. 1988, c. 156, § 9; existed at the time Hamm was decided. Since Hamm, the Alcohol Education Fund fee has increased from $80 to $100, L. 1986, c. 126, § 1. In contrast, the $75 assessment fee was not put in place until August 1993, L. 1993, c. 220, § 11; the $100 DWI

---

[2] This surcharge was increased to $125 effective March 1, 2015. L. 2014, c. 54, § 2.

surcharge did not apply until 2002, L. 2002, c. 34, § 17; and the $50 assessment under N.J.S.A. 2C:43-3.1(c) and the $6 in fines under N.J.S.A. 39:5-41(d)-(h) were not enacted until after Hamm was argued, L. 1990, c. 64, § 1; L. 1990, c. 95, § 2.  In other words, an additional $251 in fines, fees, assessments, and surcharges have been imposed since Hamm.

DWI offenders also may be subject to penalties, including confinement, for failing to meet obligations arising from a DWI conviction.  For example, an offender who does not install an ignition interlock device "in a motor vehicle owned, leased or regularly operated by him shall have his driver's license suspended for one year . . . unless the court determines a valid reason exists for the failure to comply."  N.J.S.A. 39:4-50.19(a).  The offender also will be subject to a one-year license suspension for driving an ignition interlock-equipped vehicle that "has been started by any means other than his own blowing into the device" or for driving "a vehicle that is not equipped with such a device[.]"  Ibid.

N.J.S.A. 39:4-50(b) provides that any person convicted of DWI "must satisfy the screening, evaluation, referral, program and fee requirements of the Division of Alcoholism and Drug Abuses' Intoxicated Driving Program Unit, and of the Intoxicated Driver Resource Centers and a program of alcohol and drug education and highway safety, as prescribed by the chief

19

administrator."  Failure to comply "shall result in a mandatory two-day term of imprisonment in a county jail and a driver license revocation or suspension and continuation of revocation or suspension until such requirements are satisfied, unless stayed by court order[.]"  Ibid.  That requirement existed when Hamm was decided.

N.J.S.A. 39:3-40 states that no person whose driver's license has been suspended or revoked "shall personally operate a motor vehicle" during the period of suspension or revocation. An offender whose license has been suspended due to a DWI conviction will be fined $500 and will have his driver's license "suspended for an additional period of not less than one year or more than two years, and shall be imprisoned in the county jail for not less than 10 days or more than 90 days."  N.J.S.A. 39:3-40(f)(2).  The DWI offender's motor-vehicle registration privilege will also be revoked.  N.J.S.A. 39:3-40(a).  This penalty existed when Hamm was decided, except that the statute did not include a minimum 10-day term of imprisonment and did not require revocation of the offender's registration.  L. 1994, c. 286, § 1.

Lastly, under N.J.S.A. 39:5-36(a), a court may incarcerate "any person upon whom a penalty or surcharge . . . has been imposed for a violation of [a motor-vehicle offense] where the court finds that the person defaulted . . . without good cause

and the default was willful."  Such incarceration cannot "exceed one day for each $50 of the penalty or surcharge so imposed" or "a period of 90 consecutive days."  Ibid.  The earlier version of this law, in effect when Hamm was decided, was substantially identical, other than that incarceration could not exceed "1 day for each $20.00 of the fine so imposed[.]"  L. 1975 c. 144, § 4.

V.

As an initial matter, we decline defendant's request to resolve this case on independent principles of the New Jersey Constitution.  As was true when Hamm was decided, "New Jersey has never recognized a right to trial by jury for the motor-vehicle offense of DWI" and DWI is "not a crime under New Jersey law."  121 N.J. at 112.  Those facts have not changed and we remain satisfied that the protections guaranteed by the Sixth Amendment are consonant with those found in our State Constitution.  We therefore apply the federal standard.

A.

We begin our inquiry with "[t]he most relevant indication of the seriousness" of an offense -- the severity of the penalty authorized for third or subsequent DWI offenses.  Frank, supra, 395 U.S. at 148, 89 S. Ct. at 1505, 23 L. Ed. 2d at 166.  In doing so, we keep in mind that "no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized."  Baldwin, supra, 399

21

U.S. at 69, 90 S. Ct. at 1888, 26 L. Ed. 2d at 440.  On the other hand, if the offense is punishable by six months or less, it is "appropriate to presume . . . that society views such an offense as 'petty.'"  Blanton, supra, 489 U.S. at 543-44, 109 S. Ct. at 1293, 103 L. Ed. at 556.

N.J.S.A. 39:4-50(a), the provision of the Motor Vehicle Code addressing third or subsequent DWI offenses, does not authorize a penalty of over six months' confinement.  The current mandatory nature of the term of imprisonment, while a modification of the penal aspect arising from a third or subsequent DWI conviction, does not lengthen the potential term of confinement or alter our analysis.  Indeed, the 180-day sentence is the same as that addressed in Hamm, with the only difference being in how the 180 days must be served.

Under the 1986 version of N.J.S.A. 39:4-50(a) addressed in Hamm, a DWI offender could potentially serve 90 days through community service and the remaining 90 days through outpatient treatment.  In contrast, a person sentenced under the current law is required to spend the entire 180-day sentence incarcerated, unless the defendant enrolls in up to 90 days of inpatient treatment.  Such treatment may not be available to some individuals due to their financial situation or insurance coverage, and they will forego this alternative.

Therefore, regardless of its intent, the Legislature has

22

effectively replaced a largely non-custodial and treatment-based approach with one that more heavily emphasizes confinement. This increased emphasis on incarceration represents an alteration of the Legislature's view of the penal consequences needed to address the scourge of intoxicated driving by third and subsequent offenders. This modification also marks the limit the Sixth Amendment will permit in terms of confinement without triggering the right to a jury trial. It does not, however, alter the guiding factor in our analysis: the amount of confinement to which a defendant is exposed.

We are not persuaded that defendant faced more than 180 days' incarceration in this case. To start, we reaffirm our holding in Owens, supra, that trial by jury is relevant when a defendant faces "several petty offenses [that] are factually related and arise out of a single event" but that the failure to offer the defendant a jury trial in such a case is cured by limiting the total sentence to no more "than the maximum authorized for a petty offense." 54 N.J. at 163. As noted, the primary focus of the right to a jury trial is on the penal exposure. Thus, in terms of the right to a jury trial, it is immaterial whether a defendant is tried on several factually related "petty" offenses or on a single "petty" offense as long as the total period of incarceration does not exceed six months.

As such, defendant was not entitled to a jury trial based

23

on the 15-day jail terms that his other two offenses carried. Defendant was assured that he would not be sentenced to more than 180 days' imprisonment and, more importantly, was constitutionally guaranteed a sentence of no more than six months.

We also decline to find that the IDRC requirements under N.J.S.A. 39:4-50(b) bring a third or subsequent DWI offender's maximum sentence to over 180 days' confinement. To be sure, those requirements have some relevance in determining whether the Legislature has "packed" the statute to the point of elevating it to a "serious" offense. At the same time, however, we find that the two-day sentence for failure to fulfill the requirements of the Intoxicated Driving Program Unit and the IDRC, a sentence dependent on an independent and not necessarily inevitable event, is too attenuated to affect a DWI offender's direct exposure to incarceration.

The two-day term of imprisonment is not part of the sentence for the DWI offense. Rather, the DWI statute merely requires the sentencing court to "inform the person convicted that failure to satisfy [the] requirements shall result in a mandatory two-day term of imprisonment[.]" Ibid. The sentencing court is not involved in imposing the penalty, and the conduct giving rise to the sentence is distinct from that underlying the DWI offense. In other words, the two-day

24

sentence is imposed for the separate act of not complying with the Intoxicated Driving Program Unit and IDRC requirements, not the original DWI offense.

In addition, the statute makes clear that the sentencing judge's only role in this process is to "inform the person convicted" that he must comply with the requirements. Ibid. It does not instruct the judge to craft those requirements or to include them in the sentence.

B.

Because defendant did not face over six months of confinement, we presume the DWI offense to be "petty," Hamm, supra, 121 N.J. at 112-13, and address the question whether this is a "rare situation where a legislature packs an offense it deems 'serious' with onerous penalties that nonetheless 'do not puncture the 6-month incarceration line,'" Blanton, supra, 489 U.S. at 544, 109 S. Ct. at 1293, 103 L. Ed. 2d at 556-57 (citation omitted). In making this determination, we consider "only penalties resulting from state action[.]" Id. at 544 n.8, 109 S. Ct. at 1293 n.8, 103 L. Ed. 2d at 557 n.8.

To begin with, as in Hamm, supra, we find that the deprivation of a license to drive "is clearly a 'consequence of magnitude.'" 121 N.J. at 124 (citation omitted). We also reaffirm that the ten-year license suspension, which is not new, "does not in any sense reflect a significant escalation of the

25

seriousness with which New Jersey's Legislature regards this offense, but rather a shifting social conclusion about what works best with DWI offenders." Ibid. The history and analysis regarding this suspension remain the same, and we see no reason to repeat our analysis from Hamm on this point. See id. at 118-22.

The license suspension, however, is no longer the only driving restriction included in the statute. The requirement under N.J.S.A. 39:4-50.17(b) that an offender facing a second or subsequent DWI conviction install an ignition interlock device did not exist in 1990, and we now recognize it as relevant to our analysis. That mandate places a restriction on the offender's ability to drive his vehicle, and also prevents him from operating any vehicle lacking an ignition interlock device. N.J.S.A. 39:4-50.17(a)-(c).

Those limitations, however, are far less burdensome than a license suspension. As a practical matter, an offender need not install an ignition interlock device during the suspension period if he sells the vehicle or transfers ownership to another person. Indeed, the New Jersey Motor Vehicle Commission advises that installing an ignition interlock device is not necessary if the individual "do[es] not have access to or plan[s] to operate any vehicle[.]" N.J. Motor Vehicle Commission, Ignition Interlock Device FAQs 2 (2016), http://www.state.nj.us/mvc/pdf/

26

Violations/interlock-faq.pdf.

Moreover, even when the ignition interlock device is installed, the burden is not so onerous as to indicate that the Legislature views repeat DWI offenses as "serious." Specifically, the ignition interlock device merely limits the vehicles an offender can operate, and prevents the offender from driving with a certain BAC level. Thus, while perhaps an inconvenience, the requirement, like the license suspension, is preventative rather than punitive.

The preventative nature of the ignition interlock device requirement is also reflected in the provision that individuals with family income not exceeding 149 percent of the federal poverty level are entitled to pay a reduced leasing fee for the ignition interlock device, and need not pay anything for the installation, monitoring, calibration, or removal of said device. N.J.S.A. 39:4-50.17a. Similarly, the one-year license suspension for failure to install an ignition interlock device will not be applied if "the court determines a valid reason exists for the failure to comply." N.J.S.A. 4-50.19(a).

The costs associated with the device, however, likely represent the greatest burden imposed by this requirement. The ACLU estimates the cost of having an ignition interlock device as approximately $1050 for one year and $2850 for three years. Such an expense is significant, but is spread over a period of

27

time and, as noted, can be reduced based on income.

In addition, that cost is not the result of fees paid to the State.  Rather, it simply represents the price of satisfying a court order based on market rates.  In that way, the expenses are no different from any other cost of complying with a court order, such as finding alternate means of transportation when one's driver's license is suspended.  A prime distinction here, ironically, would appear to be that, unlike with other attenuated costs, the Legislature has attempted to lessen the cost of compliance for low-income offenders.  Thus, although we consider this a financial burden, we do so to a limited extent.

More directly, DWI offenders on their third or subsequent conviction face $5931 in fees, fines, and assessments.  Of that amount, only the $1000 fine in the DWI statute and the $50 assessment under N.J.S.A. 2C:43-3.1(c) can be considered criminal penalties.  As in Hamm, we note that $1050 would constitute a "petty" fee under Blanton, supra, which cited $5000 as the amount associated with federal "petty" offenses.  489 U.S. at 544-45, 109 S. Ct. at 1294, 103 L. Ed. 2d at 557 (citing 18 U.S.C.A. § 1 (1982 ed., Supp. IV)).  The remaining fees are civil penalties which "we do not disregard," but we note that "they are not the penalties associated with crimes."  Hamm, supra, 121 N.J. at 117.

While the use of civil penalties tends to show that the

28

Legislature does not view the offense as "serious," $5931 in civil fines is significant. It is $251 more than the amount imposed in 1990 and exceeds the $5000 penalty mentioned in Blanton and federal law. 18 U.S.C.A. § 3571(b).

We do not, however, view the $5000 amount as dispositive in regard to the right to a jury trial. The Supreme Court in Blanton, supra, did not treat it as such and instead simply noted that it had "frequently looked to the federal classification scheme in determining when a jury trial must be provided." 489 U.S. at 545 n.11, 109 S. Ct. at 1294 n.11, 103 L. Ed. 2d at 557 n.11. It is also worth noting that the fines associated with "petty" federal offenses have changed in the past. See 18 U.S.C.A. § 1 (1964 ed.) (stating that petty offense was "any misdemeanor, the penalty of which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both").

In addition, strict adherence to a set amount would overlook the context of a monetary penalty, including that money, as opposed to a term of confinement, is subject to inflation. As such, while the amount of any surcharges, fines, or assessments is an essential factor in determining the right to a jury trial, and while we are not inclined to approve of fees larger than those present here, our inquiry does not end simply because the total amount due exceeds $5000.

29

The remaining penalties and fees, including the penalties for failing to install an ignition interlock device, N.J.S.A. 39:4-50.19(a); driving on a suspended license, N.J.S.A. 39:3-40; and failing to pay a penalty or surcharge, N.J.S.A. 39:5-36; are too attenuated to be relevant to the current issue before the Court. As with the two-day term of incarceration for not satisfying the IDRC requirements, those penalties are for conduct separate and distinct from the DWI offense. Although being convicted of a third or subsequent DWI offense makes it possible for the individual to receive additional penalties, such penalties are in no way preordained. Their applicability depends entirely on the subsequent conduct and choices of that person. Those penalties are therefore too removed from the DWI statute to enter into our analysis.

VI.

Given that the total term of potential confinement does not exceed six months, we presume the DWI offense to be "petty" for purposes of the Sixth Amendment. The Legislature has, however, reached the outer limit in subjecting third and subsequent DWI offenders to confinement without a jury trial. Defendant faced a mandatory term of six months' confinement, the constitutional maximum. To reiterate, "the closer the DWI system actually comes to the six-month incarceration line, the less room there may be for other penalties." Hamm, supra, 121 N.J. at 130.

30

In light of that fact, the State has also reached the outer limit of additional penalties that may be added for a third or subsequent DWI offense without triggering the right to a jury trial. Along with increasing the severity of the sentence in terms of confinement, it has added another $251 in fines, bringing the total to nearly $6000, and has enacted new driving limitations through the ignition interlock device requirement. Although not all aspects of those changes are equally relevant, the offense is teetering between classifications, and any additional penalties will demonstrate that the Legislature views a third or subsequent DWI as a "serious" offense requiring a trial by jury. Until that day arrives, however, we believe that the penal consequences of the offense do not tip the balance to classify it as "serious." As a result, the State's interest in the efficiency and cost-saving benefits of non-jury trials can still prevail.

## VII.

In reaching this conclusion, we note that the NJSBA and the Attorney General have provided information about how other jurisdictions treat DWI offenses[3] and approach the right to a jury trial. This Court has also conducted its own review -- the

---

[3] For clarity and consistency, we use the terms "driving while intoxicated" and "DWI" regardless of the labels employed by each state.

results of which are set forth at Appendix A -- which shows that every other state appears to afford jury trials for at least some DWI offenses. Such information, although not dispositive, can be helpful in guiding our decisions, particularly as they relate to important constitutional rights. See State v. Witt, 223 N.J. 409, 425-27 (2015).

We acknowledge, however, that the significance of any apparent uniformity in state practices can be belied by the context and nuances of each jurisdiction. For example, every other jurisdiction exposes at least some DWI offenders to over six months of confinement. Eighteen do so for the first offense, while the remaining thirty-two, including the District of Columbia, take that approach for second or subsequent offenses. The vast majority of those jurisdictions have also recognized a broader right to jury trials through statute, rule, or their individual constitutions, or have, unlike New Jersey, classified all or some DWI offenses as crimes.

Thus, while other states may provide jury trials in at least some DWI cases, this fact provides minimal guidance for what is appropriate in our State. New Jersey has historically addressed DWI as a motor-vehicle offense. A motor-vehicle offense is not included in an individual's criminal history record, N.J.A.C. 13:59-1.1, and is not subject to expungement as a criminal record, N.J.S.A. 2C:52-28. The Legislature has not

32

enacted a statute guaranteeing a right to a jury trial for DWI offenses. Rather, the legislative response to repeat DWI conduct has been to increase the severity of the penalties focused on prevention and deterrence, thereby creating a law that is far less punitive than those found in many other states. It has resisted criminalizing this conduct except in separate criminal statutes addressing cases where a DWI offense results in bodily injury or death.[4] That approach reveals a legislative intent to blend punishment with deterrence, which runs counter to concluding that the current penalties assessed for third and subsequent DWI offenses have transformed DWI from a "petty" offense, or a quasi-criminal offense as we classify such conduct, to a "serious" offense requiring a jury trial.

## VIII.

In sum, we believe that the Legislature has increased the severity of penalties associated with repeat DWI offenses to the point where any additional direct penalties, whether involving incarceration, fees, or driving limitations, will render third or subsequent DWI offenses "serious" offenses for the purpose of

---

[4] For example, while intoxication is not an element of the crime of death by auto, DWI "shall give rise to an inference that the defendant was driving recklessly" for the purpose of proving that offense. N.J.S.A. 2C:11-5(a). The same is true of assault by auto. N.J.S.A. 2C:12-1(c)(1); see also State v. Mara, 253 N.J. Super. 204, 213 (App. Div. 1992). A DWI violation may also lead to increased penalties for death by auto, N.J.S.A. 2C:11-5(b)(1)-(3), and assault by auto, N.J.S.A. 2C:12-1(c).

triggering the right to a jury trial.  At that point, the balance will shift and the State's interest in efficiency will be outweighed by the magnitude of the consequences facing the defendant.  In such an event, the constitutional right to a jury trial will apply, regardless of how the offense is categorized or labeled by the Legislature.

Until that time, however, we are satisfied that the current penalty scheme is within the confines of Sixth Amendment precedent and that the Legislature has managed to strike a minimally acceptable balance in weighing the various interests at play.  As such, third or subsequent DWI offenders are not entitled to a jury trial, and defendant's conviction procured by a bench trial did not violate his Sixth Amendment right to a jury trial.

IX.

The judgment of the Appellate Division is affirmed.

This Court's review of the DWI laws and jury trial rights in the other forty-nine states and the District of Columbia appears to establish that New Jersey is unique in not providing the right to a jury trial to any DWI offenders. However, the review also reveals key distinctions between the other jurisdictions and this State, based on the punishments and classifications of DWI and the rights guaranteed by individual state legislatures and constitutions, that explain this result.

I.

Eighteen states expose first-time DWI offenders to over six months' confinement, thereby implicating the right to a jury trial under the Sixth Amendment:

1. **Alabama** authorizes up to a year in prison for a first offense. Ala. Code § 32-5A-191(e).
2. **Arkansas** authorizes up to a year in prison for a first offense. Ark. Code Ann. § 5-65-111(a)(1)(A).
3. **Colorado** authorizes up to a year in prison for a first offense. Colo. Rev. Stat. § 42-4-1307(3)(a)(I).
4. **Delaware** authorizes up to a year in prison for a first offense. Del. Code Ann. tit. 21, § 4177(d)(1).
5. **Georgia** authorizes up to a year in prison for a first offense. Ga. Code Ann. § 40-6-391(c)(1)(B).
6. **Illinois** classifies a first offense as a misdemeanor, 625 Ill. Comp. Stat. 5/11-501(c)(1), punishable by less than a year in prison, 730 Ill. Comp. Stat. 5/5-4.5-55(a).
7. **Iowa** authorizes up to a year in prison for a first offense. Iowa Code § 321J.2(3)(a).
8. **Maryland** authorizes up to a year in prison for a first offense. Md. Code Ann., Transp. § 27-101(k)(1)(i).
9. **Massachusetts** authorizes up to two-and-one-half years in prison for a first offense. Mass. Gen. Laws ch. 90, § 24(1)(a)(1).
10. **New York** authorizes up to a year in prison for a first offense. N.Y. Veh. & Traf. Law § 1193(1)(b)(i).
11. **Oklahoma** authorizes up to a year in prison for a first offense. Okla. Stat. tit. 47, § 11-902(C)(b).
12. **Oregon** classifies a first offense as a misdemeanor, Or. Rev. Stat. § 813.010(4), punishable by up to a year in prison, Or. Rev. Stat. § 161.615(1).

13. **Rhode Island** authorizes up to a year in prison for a first offense.  R.I. Gen. Laws § 31-27-2(d)(1)(i).
14. **South Dakota** classifies a first offense as a misdemeanor, S.D. Codified Laws § 32-23-2, punishable by up to a year in prison, S.D. Codified Laws § 22-6-2(1).
15. **Tennessee** authorizes up to eleven months and twenty-nine days in prison for a first offense.  Tenn. Code Ann. § 55-10-402(a)(1)(A).
16. **Vermont** authorizes up to two years in prison for a first offense.  Vt. Stat. Ann. tit. 23, § 1210(b).
17. **Virginia** classifies a first offense as a misdemeanor, Va. Code Ann. § 18.2-270(A), punishable by up to a year in prison, Va. Code Ann. § 18.2-11(a).
18. **Washington** authorizes up to 364 days in prison for a first offense.  Wash. Rev. Code § 46.61.5055(1)(a)(i).

II.

The remaining thirty-two jurisdictions, including the District of Columbia, expose second or subsequent DWI offenders to over six months' confinement, thereby applying the federal right to a jury trial to those offenses:

1. **Alaska** authorizes not less than 240 days in prison for a fifth offense.  Alaska Stat. § 28.35.030(b)(1)(E).
2. **Arizona** classifies a third or subsequent offense within eighty-four months as a felony, Ariz. Rev. Stat. Ann. § 28-1383(A)(2), (L)(1), punishable by up to three years in prison, Ariz. Rev. Stat. Ann. § 13-702(D).
3. **California** authorizes up to a year in prison for a second offense within ten years.  Cal. Veh. Code § 23540(a).
4. **Connecticut** authorizes up to two years in prison for a second offense within ten years.  Conn. Gen. Stat. § 14-227a(g)(2)(B).
5. **District of Columbia** authorizes up to a year in prison for a second offense.  D.C. Code § 50-2206.13(b).
6. **Florida** authorizes up to nine months in prison for a second offense.  Fla. Stat. § 316.193(2)(a)(2)(b).
7. **Hawaii** authorizes an "indeterminate term of imprisonment of five years" for a fourth or subsequent offense within ten years.  Haw. Rev. Stat. § 291E-61.5(a)(1), (b)(1), (b)(3)(A), (d)(1).
8. **Idaho** authorizes up to a year in prison for a second offense within ten years.  Idaho Code § 18-8005(4)(a).

36

9. **Indiana** classifies a second offense within five years as a felony, Ind. Code § 9-30-5-3(a)(1), punishable by up to two-and-one-half years in prison, Ind. Code § 35-50-2-7(b).
10. **Kansas** authorizes up to a year in prison for a second offense. Kan. Stat. Ann. § 8-1567(b)(1)(B).
11. **Kentucky** authorizes up to a year in prison for a third offense within five years. Ky. Rev. Stat. Ann. § 189A.010(5)(c).
12. **Louisiana** authorizes one to five years in prison for a third offense. La. Stat. Ann. § 14:98.3(A)(1).
13. **Maine** authorizes not less than six months in prison for a fourth offense within ten years. Me. Stat. tit. 29-A, § 2411(5)(D)(2).
14. **Michigan** authorizes up to a year in prison for a second offense within seven years. Mich. Comp. Laws § 257.625(9)(b)(i).
15. **Minnesota** mandates at least 180 days in prison for a fourth offense within ten years, Minn. Stat. § 169A.275(3)(a)(1), and at least a year in prison for a fifth offense within ten years, Minn. Stat. § 169A.275(4)(a)(1).
16. **Mississippi** authorizes up to a year in prison for a second offense within five years. Miss. Code Ann. § 63-11-30(2)(b)(i).
17. **Missouri** classifies a second offense as a misdemeanor, Mo. Rev. Stat. § 577.023(2), punishable by up to a year in prison, Mo. Rev. Stat. § 558.011(1)(5).
18. **Montana** authorizes up to a year in prison for a second offense. Mont. Code Ann. § 61-8-714(2)(a).
19. **Nebraska** classifies a fourth offense as a felony, Neb. Rev. Stat. § 60-6,197.03(7), punishable by up to three years in prison, Neb. Rev. Stat. § 28-105(1).
20. **Nevada** authorizes one year to six years in prison for a third offense within seven years. Nev. Rev. Stat. § 484C.400(1)(c).
21. **New Hampshire** classifies a second offense within ten years as a misdemeanor, N.H. Rev. Stat. Ann. § 265-A:18(IV)(a), punishable by up to a year in prison, N.H. Rev. Stat. Ann. § 625:9(IV)(a).
22. **New Mexico** authorizes up to 364 days in prison for a second offense. N.M. Stat. Ann. § 66-8-102(F).

23. **North Carolina** authorizes up to a year in prison for a second offense within seven years.  N.C. Gen. Stat. § 20-179(c)(1)(a), (h).
24. **North Dakota** classifies a third offense within seven years as a misdemeanor, N.D. Cent. Code § 39-08-01(3), punishable by up to a year in prison, N.D. Cent. Code § 12.1-32-01(5).
25. **Ohio** authorizes up to a year in prison for a third offense within six years.  Ohio Rev. Code Ann. § 4511.19(G)(1)(c)(i).
26. **Pennsylvania** classifies a third or subsequent offense as a misdemeanor, 75 Pa. Cons. Stat. § 3803(a)(2), punishable by up to two years in prison, 18 Pa. Cons. Stat. § 1104(2).
27. **South Carolina** authorizes up to a year in prison for a second offense.  S.C. Code Ann. § 56-5-2930(A)(2).
28. **Texas** classifies a second offense as a misdemeanor, Tex. Penal Code Ann. § 49.09(a), punishable by up to a year in prison, Tex. Penal Code Ann. § 12.21(2).
29. **Utah** classifies a third or subsequent offense within ten years as a felony, Utah Code Ann. § 41-6a-503(2)(b)(i), punishable by up to five years in prison, Utah Code Ann. § 76-3-203(3).
30. **West Virginia** authorizes six months to a year in prison for a second offense.  W. Va. Code § 17C-5-2(l).
31. **Wisconsin** authorizes up to a year in prison for a third offense.  Wis. Stat. § 346.65(2)(am)(3).
32. **Wyoming** authorizes up to seven years in prison for a fourth or subsequent offense within ten years.  Wyo. Stat. Ann. § 31-5-233(e).

III.

In addition, at least thirty-nine states have established a broader right to jury trials by statute, rule, or under their state constitutions, or have applied the right to DWI offenses, at least in part, by classifying DWI as a crime even when the attached penalty is for six months' confinement or less:

1. **Alabama** provides that "[d]efendants in all criminal cases shall have the right to be tried by a jury[,]" Ala. R. Crim. P. 18.1(a), and classifies DWI as a misdemeanor or felony, Ex parte Marshall, 25 So. 3d 1190, 1194 (Ala. 2009).

2. **Alaska** applies the right to a jury trial to all "offenses in which a direct penalty may be incarceration," State v. Dutch Harbor Seafoods, Ltd., 965 P.2d 738, 741 (Alaska 1998), and authorizes not less than seventy-two hours in prison for a first offense, Alaska Stat. § 28.35.030(b)(1)(A).

3. **Arizona** applies the right to a jury trial to DWI defendants, Ariz. Rev. Stat. Ann. § 28-1381(F), even though a first offense is punishable by no less than ten days in jail, Ariz. Rev. Stat. Ann. § 28-1381(I)(1).

4. **Arkansas** applies the right to a jury trial "to all cases at law, without regard to the amount in controversy[,]" Ark. Const. art. II, § 7, including misdemeanors, Winkle v. State, 841 S.W.2d 589, 590 (Ark. 1992), and classifies a first offense as a misdemeanor, Ark. Code Ann. § 5-65-111(a)(1)(A).

5. **California** provides that "[n]o person can be convicted of a public offense unless by verdict of a jury," Cal. Penal Code § 689, and classifies DWI as a public offense, Cal. Veh. Code § 23152, punishable for a first offense by up to six months in prison, Cal. Veh. Code § 23536(a).

6. **Colorado** defines a petty offense as one not punishable by more than six months in prison or $500 in fines, and provides that "[a] defendant charged with a petty offense shall be entitled to a jury trial[.]" Colo. Rev. Stat. § 16-10-109(1), (2).

7. **Connecticut** provides that a "party accused in a criminal action in the Superior Court may demand a trial by jury" unless the maximum penalty is a fine of $199, Conn. Gen. Stat. § 54-82b(a), and classifies a first offense, which is punishable by up to six months in prison, Conn. Gen. Stat. § 14-227a(g)(1)(B)(i), as a misdemeanor, McCoy v. Comm'r of Pub. Safety, 12 A.3d 948, 957-59 (Conn. 2011).

8. **Florida** provides that, "[i]n each prosecution for a violation of a state law or a municipal or county ordinance punishable by imprisonment, the defendant shall have, upon demand, the right to a trial by an impartial jury[,]" Fla. Stat. § 918.0157, and authorizes up to six months in prison for a first offense, Fla. Stat. § 316.193(2)(a)(2)(a). Florida also explicitly applies the right to a jury trial to all DWI offenses. Fla. Stat. § 316.1934(4).

9. **Georgia** provides that criminal defendants "shall have a public and speedy trial by an impartial jury[,]" Ga.

Const. art. I, § I, ¶ XI(a), and classifies a first offense as a misdemeanor, Ga. Code Ann. § 40-6-391(c).

10. **Hawaii** applies the right to a jury trial when a defendant "may be imprisoned for six months or more." Haw. Rev. Stat. § 806-60.

11. **Idaho** "provides a trial by jury for all public offenses which are potentially punishable by imprisonment[,]" State v. Wheeler, 753 P.2d 833, 836 (Idaho 1988), and authorizes up to six months in prison for a first offense, Idaho Code § 18-8005(1)(a).

12. **Illinois** provides that "[e]very person accused of an offense shall have the right to a trial by jury" unless waived or for an "ordinance violation punishable by fine only[,]" 725 Ill. Comp. Stat. 5/103-6, and classifies DWI as a misdemeanor, 625 Ill. Comp. Stat. 5/11-501(c)(1), punishable for a first offense by less than a year in prison, 730 Ill. Comp. Stat. 5/5-4.5-55(a).

13. **Indiana** provides that "[a] defendant charged with a misdemeanor may demand trial by jury[,]" Ind. R. Crim. P. 22, and classifies a first offense as a misdemeanor, Ind. Code § 9-30-5-2(a), punishable by up to sixty days in prison, Ind. Code § 35-50-3-4.

14. **Iowa** provides the right to a jury trial "[i]n all criminal prosecutions, and in cases involving the life, or liberty of an individual[,]" Iowa Const. art. I, § 10, and classifies a first offense as a misdemeanor punishable by up to a year in prison, Iowa Code § 321J.2(2)(a), (3)(a).

15. **Kansas** provides that "[t]he trial of misdemeanor cases shall be to the court unless a jury trial is requested in writing by the defendant[,]" Kan. Stat. Ann. § 22-3404(1), and classifies first offense as a misdemeanor punishable by up to a six months in prison, Kan. Stat. Ann. § 8-1567(b)(1)(A).

16. **Kentucky** provides that "[d]efendants shall have the right to a jury trial in all criminal prosecutions, including prosecutions for violations of traffic laws," Ky. Rev. Stat. Ann. § 29A.270(1), and classifies DWI as a crime, Commonwealth v. Ramsey, 920 S.W.2d 526, 529 (Ky. 1996), punishable by up to thirty days in prison for a first offense, Ky. Rev. Stat. Ann. § 189A.010(5)(a).

17. **Maine** "guarantees all criminal defendants, even those charged with petty crimes, the right to trial by jury[,]" State v. Lenfestey, 557 A.2d 1327, 1327-28 (Me. 1989) (citing Me. Const. art. I, § 6), and classifies DWI as a

crime, even though a first offense may not result in confinement, Me. Stat. tit. 29-A, § 2411(5)(A)(3).

18. **Maryland** applies the right to a jury trial to criminal cases exposing a defendant to "a penalty of imprisonment[,]" Md. Code Ann., Crim. Proc. § 6-101(1), and classifies a first offense as a misdemeanor punishable by up to a year in prison, Md. Code Ann., Transp. § 27-101(a), (k)(1)(i).

19. **Michigan** has "largely extended the right to a jury trial to petty offenses, without precisely addressing whether Sixth Amendment analysis applies[,]" People v. Antkoviak, 619 N.W.2d 18, 41 (Mich. Ct. App. 2000), and classifies a first offense as a misdemeanor punishable by up to ninety-three days in jail, Mich. Comp. Laws § 257.625(9)(a)(ii).

20. **Minnesota** provides that "[a] defendant has a right to a jury trial for any offense punishable by incarceration[,]" Minn. R. Crim. P. 26.01(1)(1)(a), and classifies a first offense as a misdemeanor, Minn. Stat. § 169A.27, punishable by up to ninety days in prison, Minn. Stat. § 609.02(3).

21. **Missouri** applies the right to a jury trial to all misdemeanor cases, Mo. Rev. Stat. § 543.200, and classifies a first offense as a misdemeanor, Mo. Rev. Stat. § 577.010(2).

22. **Montana** provides that "[t]he parties in a misdemeanor case are entitled to a jury[,]" Mont. Code Ann. § 46-17-201(1), and classifies DWI as a felony or misdemeanor, State v. Anderson, 182 P.3d 80, 84 (Mont. 2008), with a first offense punishable by up to six months in prison, Mont. Code Ann. § 61-8-714(1)(a).

23. **Nebraska** provides that "[e]ither party to any case in county court, except criminal cases arising under city or village ordinances, traffic infractions, other infractions, and any matter arising under the Nebraska Probate Code or the Nebraska Uniform Trust Code, may demand a trial by jury[,]" Neb. Rev. Stat. § 25-2705(1), and classifies DWI as a felony or misdemeanor under state law, Neb. Rev. Stat. § 60-6,197.03, with a first offense punishable by up to sixty days in prison, Neb. Rev. Stat. § 28-106(1).

24. **New Hampshire** guarantees "a jury trial to all criminal defendants facing the possibility of incarceration[,]" In re Senate, 608 A.2d 202, 204-05 (N.H. 1992), and

classifies DWIs as misdemeanors or felonies, <u>N.H. Rev. Stat. Ann.</u> § 265-A:18(I).

25. **North Carolina** provides that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court," <u>N.C. Const.</u> art. I, § 24, and classifies a first offense as a misdemeanor, <u>N.C. Gen. Stat.</u> § 20-138.1(d), even though it may only expose a defendant to up to sixty days in jail, <u>N.C. Gen. Stat.</u> § 20-179(f)(3), (k).

26. **North Dakota** provides that misdemeanor cases will be tried before at least six jurors, <u>N.D.R. Crim. P.</u> 23(b)(2), and classifies DWI as felony or misdemeanor, <u>N.D. Cent. Code</u> § 39-08-01(3), with a first offense punishable by up to thirty days in prison, <u>N.D. Cent. Code</u> § 12.1-32-01(6).

27. **Ohio** applies the right to a jury trial to any case involving the violation of a statute, except for minor misdemeanors or cases that do not involve "the possibility of a prison term or jail term and for which the possible fine does not exceed one thousand dollars[,]" <u>Ohio Rev. Code Ann.</u> § 2945.17(A), (B), and classifies a first offense as a misdemeanor punishable by up to six months in prison, <u>Ohio Rev. Code Ann.</u> § 4511.19(G)(1)(a)(i).

28. **Oklahoma** applies the right to a jury trial "except in civil cases wherein the amount in controversy does not exceed [$1500], or in criminal cases wherein punishment for the offense charged is by fine only, not exceeding [$1500][,]" <u>Okla. Const.</u> art. II, § 19, and classifies a first offense as a misdemeanor punishable by up to a year in prison, <u>Okla. Stat.</u> tit. 47, § 11-902(C)(b).

29. **Oregon** provides that, "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury[,]" <u>Or. Const.</u> art. I, § 11, and classifies a first offense as a misdemeanor, <u>Or. Rev. Stat.</u> § 813.010(4), punishable by up to a year in prison, <u>Or. Rev. Stat.</u> § 161.615(1).

30. **South Carolina** applies the right to a jury trial to all DWI defendants, <u>S.C. Code Ann.</u> § 56-5-2935, even though a first offense is punishable by no more than thirty days in prison, <u>S.C. Code Ann.</u> § 56-5-2930(A)(1).

31. **South Dakota** applies the right to a jury trial to "any criminal prosecution, whether for violation of state law or city ordinance, in which a direct penalty of incarceration for any period of time could be imposed," <u>State v. Wikle</u>, 291 <u>N.W.</u>2d 792, 794 (S.D. 1980), and

classifies a first offense as a misdemeanor, S.D. Codified Laws § 32-23-2, punishable by up to a year in prison, S.D. Codified Laws § 22-6-2(1).

32. **Texas** applies the right to a jury trial "to all criminal prosecutions," including misdemeanors, Chaouachi v. State, 870 S.W.2d 88, 90 (Tex. App. 1993), and classifies a first offense as a misdemeanor, Tex. Penal Code Ann. § 49.04(b), punishable by up to 180 days in jail, Tex. Penal Code Ann. § 12.22(2).

33. **Utah** provides that, "[i]n criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury[,]" Utah Const. art. I, § 12, and has applied that right to DWI, State v. Nuttall, 611 P.2d 722, 725 (Utah 1980), a misdemeanor, Utah Code Ann. § 41-6a-503(1)(a), punishable by up to six months for a first offense, Utah Code Ann. § 76-3-204(2).

34. **Vermont** law does not "provide that certain classes of offenses shall be tried without a jury or authorize the legislature to make such provision by statutory enactment." State v. Becker, 287 A.2d 580, 582 (Vt. 1972).

35. **Virginia** applies the right to a jury trial to misdemeanor offenses, Va. Code Ann. § 19.2-258, and classifies a first offense as a misdemeanor, Va. Code Ann. § 18.2-270(A).

36. **Washington** provides that, when an offense carries a possible term of imprisonment, "the constitution requires that a jury trial be afforded unless waived[,]" Pasco v. Mace, 653 P.2d 618, 625 (Wash. 1982), and authorizes up to 364 days in prison for a first offense, Wash. Rev. Code § 46.61.5055(1)(a)(i).

37. **West Virginia** applies the right to a jury trial to "both felonies and misdemeanors where the penalty imposed involves any period of incarceration[,]" Hendershot v. Hendershot, 263 S.E.2d 90, 95 (W. Va. 1980), and classifies a first offense as a misdemeanor punishable by up to six months in prison, W. Va. Code § 17C-5-2(e).

38. **Wisconsin** applies the right to a jury trial to misdemeanor crimes, State v. Slowe, 284 N.W. 4, 5-6 (Wis. 1939), and classifies a second or subsequent offense as a crime, State v. Verhagen, 827 N.W.2d 891, 896 (Wis. Ct. App.), review denied, 839 N.W.2d 866 (Wis. 2013), cert. denied, 134 S. Ct. 927, 187 L. Ed. 2d 783 (2014), punishable by up to six months in prison, Wis. Stat. § 346.65(2)(2).

39. **Wyoming** applies the right to a jury trial to crimes "punishable by any jail term, regardless of length," Brenner v. Casper, 723 P.2d 558, 561 (Wyo. 1986), and classifies a first offense as a misdemeanor punishable by up to six months in prison, Wyo. Stat. Ann. § 31-5-233(e).


CHIEF JUSTICE RABNER, and JUSTICES LaVECCHIA, PATTERSON, and SOLOMON join in JUDGE CUFF's opinion.  JUSTICE ALBIN filed a separate dissenting opinion.  JUSTICE FERNANDEZ-VINA did not participate.

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

        v.

JAMES R. DENELSBECK,

     Defendant-Appellant.

JUSTICE ALBIN, dissenting.

A person facing a fourth conviction for driving while intoxicated (DWI) has a right to a jury trial in every state except one -- New Jersey. Our state holds this dubious distinction because, in the case of third and subsequent DWI offenses, the majority elevates "the State's interest in the efficiency and cost-saving benefits of non-jury trials," State v. Denelsbeck, __ N.J. __, __ (2016) (slip op. at 31), above the Sixth Amendment guarantee of the right to a jury trial. However inefficient and costly a jury trial may be, the right to one is enshrined in the Federal Bill of Rights.[1] "A jury trial is self-government at work in our constitutional system," and in our

_____

[1] The right to trial by jury also has been guaranteed by the New Jersey Constitution, beginning in 1776. Allstate New Jersey v. Lajara, 222 N.J. 129, 140-41 (2015).

1

democratic society a jury verdict is the ultimate validation of the guilt or innocence of a defendant.  Allstate New Jersey v. Lajara, 222 N.J. 129, 134 (2015).

In this case, a municipal court judge denied defendant James Denelsbeck's request for a jury trial despite the array of severe penalties he faced for a fourth DWI conviction.  After a bench trial, the judge convicted defendant of DWI and imposed the following sentence:  a mandatory 180-day jail term; an additional twelve hours of participation at an Intoxicated Driver Resource Center (IDRC); ten-year's loss of license privileges; fines, penalties, costs, and surcharges totaling about $6500; and the installment of an ignition interlock device in defendant's automobile for a period of two years after completing his license suspension.

In Blanton v. North Las Vegas, the United States Supreme Court held that although a potential sentence exceeding 180 days in jail automatically triggers the right to a jury trial, the right is still guaranteed when a sentence of less than six months is packed with additional "onerous penalties."  489 U.S. 538, 542-44, 109 S. Ct. 1289, 1293, 103 L. Ed. 2d 550, 556-57 (1989).  In light of Blanton, this Court declared in State v. Hamm that "the closer the DWI system actually comes to the six-month incarceration line, the less room there may be for other penalties" without offending the Sixth Amendment's jury trial

2

right.  121 N.J. 109, 130 (1990), cert. denied, 499 U.S. 947, 111 S. Ct. 1413, 113 L. Ed. 2d 466 (1991).

We have crossed the red line set in Blanton and Hamm.  We justified withholding the right to a jury trial for a third-time DWI offense in Hamm based on the "rehabilitative emphasis in New Jersey's DWI laws" at the time.  Ibid.  Indeed, in Hamm, the defendant was not imprisoned, but ordered to perform community service and undergo inpatient and outpatient therapy.  Ibid.

The primary focus of New Jersey's DWI laws today is not rehabilitation, but rather punishment and deterrence.  Defendant's mandatory 180-day jail term, standing alone, was at the outermost constitutional limit without triggering the right to a jury trial.  Surely, the packing of an additional twelve hour IDRC requirement and extremely onerous licensure and financial penalties breached the constitutional threshold.

This case is not the time to draw another red line.  This case is the time for the Court to honor the promise it made twenty-five years ago in Hamm.  This case is the time for the Court to confer on third and subsequent DWI offenders the fundamental right guaranteed by the Sixth Amendment and guaranteed in every other state and the District of Columbia -- the right to a jury trial.  Because the enforced bench trial denied defendant a basic right protected by the United States Constitution, I respectfully dissent.

3

                          I.

                          A.

"[A] defendant is entitled to a jury trial whenever the offense for which he is charged carries a maximum authorized prison term of greater than six months."  Blanton, supra, 489 U.S. at 542, 109 S. Ct. at 1293, 103 L. Ed. 2d at 556.  However, even when a defendant is not facing a sentence of more than six months, he is still entitled to a jury trial if "additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one."  Id. at 543, 109 S. Ct. at 1293, 103 L. Ed. 2d at 556.  The right to a jury trial cannot be denied "where a legislature packs an offense it deems 'serious' with onerous penalties that nonetheless 'do not puncture the 6-month incarceration line.'"  Id. at 543, 109 S. Ct. at 1293, 103 L. Ed. 2d at 556-57.  Therefore, the nature of the penalties, not how the Legislature classifies the offense, ultimately determines when a defendant is entitled to a jury trial.

At the time this Court decided Hamm, supra, in 1990, the statutory penalties for a third or subsequent DWI offense were "not so severe as to clearly reflect a legislative determination of a constitutionally 'serious' offense requiring jury trial." 121 N.J. at 111.  Then, an offender faced a non-mandatory 180-

4

day jail term.  State v. Laurick, 120 N.J. 1, 5, cert. denied, 498 U.S. 967, 111 S. Ct. 429, 112 L. Ed. 2d 413 (1990).  The municipal court was authorized to commute the sentence to ninety days' community service and a combination of ninety days of inpatient and outpatient alcohol rehabilitation therapy.  Ibid. Indeed, the defendant in Hamm was sentenced "to ninety days of community service, twenty-eight days in an inpatient program and sixty days in an outpatient program."  Hamm, supra, 121 N.J. at 111.  Additionally, "[t]he court fined defendant $1,000; imposed a surcharge of $100 and $15 court costs; and suspended his license for ten years."  Ibid. (citation omitted).  Furthermore, offenders were required to pay a $3000 to $4500 insurance surcharge and a $100 Drunk Driving Enforcement Fund surcharge. Laurick, supra, 120 N.J. at 5-6.

The Court in Hamm concluded by noting that

> Blanton now appears to embrace a spectrum of values, a continuum rather than a clear contrast:  the closer the DWI system actually comes to the six-month incarceration line, the less room there may be for other penalties. For now, given the rehabilitative emphasis in New Jersey's DWI laws (Hamm will serve no county-jail time; his sentence is split between community service and rehabilitation), we find the Blanton criteria not to be violated.
>
> [121 N.J. at 130.]

B.

After Hamm, the Legislature steadily imposed more severe penalties for a third or subsequent DWI offense, including a mandatory custodial term.  In 2004, the Legislature provided that a defendant convicted of a third or subsequent DWI offense "shall be sentenced to imprisonment for a term of not less than 180 days," with the sole exception that "the court may lower such term for each day, not exceeding 90 days, served participating in a drug or alcohol inpatient rehabilitation program."  See L. 2003, c. 315 (emphasis added).  Importantly, only defendants with the financial resources to pay for an inpatient program will receive such treatment if the option is offered by the court.  Here, defendant was sentenced to serve the entirety of his custodial term in the county jail.

In 1999, the Legislature passed N.J.S.A. 39:4-50.17, which required second or subsequent DWI offenders to install an ignition interlock device on vehicles they owned during the period of their license suspension and for one to three years thereafter. See L. 1999, c. 417.  The cost of an ignition interlock device for just the three-year period after completion of the ten-year license suspension is approximately $3000.  Additional penalties added since Hamm are the $100 Alcohol Education, Rehabilitation and Enforcement Fund fee, see L. 1995, c. 243 (raised to $100 from $80); $100 DWI surcharge, see L. 2002, c. 34; $75 Safe Neighborhoods Services Fund assessment,

6

see L. 1993, c. 220; $50 violent crime assessment, see L. 1990, c. 64, L. 1991, c. 329; and $6 motor vehicle offense fine supplement, see L. 1997, c. 177, L. 2007, c. 174.

The jail term, license suspension, and financial and other penalties imposed on defendant far exceed those imposed in Hamm -- and Hamm was a close call in deciding whether the jury-trial right attached. See Hamm, supra, 121 N.J. at 130. Here, defendant must serve the entirety of his 180-day county jail sentence. The court, moreover, imposed a ten-year license suspension, twelve-hour participation in an IDRC, a two-year post-suspension ignition interlock device costing approximately $2000, a $3000 insurance surcharge, a $1000 fine, and $431 in other penalties and assessments.

## II.

### A.

Under the statutory regime in place when this Court decided Hamm, the Court held that the Legislature did not consider third and subsequent DWI offenses "serious" because "[t]he law allows for various alternatives to incarceration, with a strong emphasis on community service and rehabilitative alternatives." Id. at 126-28. It is now clear that "the Legislature has so 'packed' the offense of DWI that it must be regarded as 'serious' for sixth-amendment purposes." See id. at 114-15.

7

The most significant statutory change since Hamm is the 180-day mandatory custodial period.  See Blanton, supra, 489 U.S. at 542, 109 S. Ct. at 1292, 103 L. Ed. 2d at 556 ("[B]ecause incarceration is an 'intrinsically different' form of punishment, it is the most powerful indication of whether an offense is 'serious.'" (citation omitted)).  As we stated in Hamm, supra, "the closer the DWI system actually comes to the six-month incarceration line, the less room there may be for other penalties."  121 N.J. at 130.  New Jersey's DWI statutory scheme is now at the 180-day demarcation line.  The statutory packing of other "onerous penalties" to accompany the 180-day mandatory jail term clearly reflects a legislative determination that a fourth-time DWI is a "serious" offense, thereby triggering the right to a jury trial.  See Blanton, supra, 489 U.S. at 543, 109 S. Ct. at 1293, 103 L. Ed. 2d at 556-57.

The Legislature's failure to classify a third or subsequent DWI as a crime cannot be determinative.  Defendant's DWI sentence exceeded the custodial term and penalties customarily imposed for a fourth-degree crime under N.J.S.A. 2C:43-1(a) for which there is a jury-trial right.  A first-time fourth-degree offender, although exposed to a sentence not to exceed eighteen months in jail, N.J.S.A. 2C:43-6(a)(4), benefits from a presumption of non-incarceration.  N.J.S.A. 2C:44-1(d), (e).  No custodial term is required of a fourth-degree offender.

Moreover, although a fourth-degree offender faces a potential $10,000 fine, N.J.S.A. 2C:43-3(b)(2), no fine is required. In short, a third or subsequent DWI offender typically not only will serve a longer custodial sentence and pay a greater fine than a person convicted of a fourth-degree crime, but also will face the additional penalty of a ten-year license suspension. Yet, a fourth DWI offense will be tried before a judge.

The majority's position also is at odds with Richter v. Fairbanks, 903 F.2d 1202 (8th Cir. 1990), which is substantially similar to the case before us. In Richter, the defendant was convicted of his third DWI and sentenced to six months' imprisonment, a fifteen-year license suspension, and a $500 fine. Id. at 1203. The court held "that adding the 15-year license revocation to the six month prison term resulted in a penalty severe enough to warrant a jury trial" under Blanton. Id. at 1205. While, here, defendant's license suspension is ten years rather than fifteen, his fines, fees, and costs are approximately fifteen times those imposed on the defendant in Richter.

B.

Had defendant been charged with a fourth DWI in any other state or in the District of Columbia, he would be entitled to a jury trial. New Jersey alone denies him this right. Indeed, a national survey reveals how far out of the mainstream our laws

9

and jurisprudence are concerning the jury-trial right of those charged with DWI offenses.

In forty states, a defendant has a right to a jury trial for a first DWI offense. See Dissent Appendix. In five states and the District of Columbia, the right attaches for a second offense. Ibid. In three, a defendant has a right to a jury trial beginning with his third offense. Ibid. In only one state -- Hawaii -- does a defendant not gain the right to a jury until his fourth offense. Ibid.

Additionally, many states grant the right to a jury trial to DWI offenders facing much less severe penalties than those found in New Jersey's statutory scheme for third-time DWI offenders. For example, Wisconsin provides a jury trial to second-time offenders, who face imprisonment of five days to six months, a fine of $350 to $1100, a one-year license suspension, and an ignition interlock device for at least one year. See Wis. Stat. §§ 343.30(1q), 343.301, 343.307, 346.63, 346.65, 939.12; State v. Slowe, 284 N.W. 4, 5-6 (Wis. 1939). California provides a jury trial to first-time offenders, who face ninety-six hours to six months' imprisonment, an ignition interlock device for up to three years, a fine of $390 to $1000, and a six-month license suspension. See Cal. Penal Code § 689; Cal. Veh. Code §§ 13352(a)(1), 23152, 23536(a), 23536(c), 23575(a)(1). Idaho also provides a jury trial for first-time

10

DWI offenders, who face imprisonment of up to six months and up to a $1000 fine, a thirty-day mandatory license suspension, and an additional sixty to 150-day license suspension or restricted driving privileges. See Idaho Code § 18-8004, 18-8005(1), 19-1902; State v. Wheeler, 753 P.2d 833, 836 (Idaho 1988). Last, Texas grants a jury-trial right to first-time offenders, who face seventy-two hours to 180 days' imprisonment, a fine of up to $2000, and a license suspension of ninety days. See Tex. Penal Code Ann. §§ 12.22, 49.04; Tex. Transp. Code Ann. §§ 524.012, 524.022(a)(1); Chaouachi v. State, 870 S.W.2d 88, 90 (Tex. Ct. App. 1993).

Last, according to the majority, any additional penalty will tip the balance in favor of a jury trial. In light of the extremity of the majority's position, that stand is reasonable. However, going forward, we will have the absurd scenario in which a third-time DWI offender who refuses to take a breathalyzer test, and therefore faces a mandatory twenty-year license suspension, will be entitled to a jury trial, see N.J.S.A. 39:4-50.4a(a), whereas the motorist who takes the breathalyzer will be consigned to a bench trial.

## III.

Oftentimes, this Court has construed the New Jersey Constitution to provide greater rights than those granted under the United States Constitution. See, e.g., State v. Earls, 214

<u>N.J.</u> 564, 568-69, 584-85 (2013) (noting that New Jersey Constitution provides greater privacy rights to cell phone users than does Federal Constitution); <u>State v. McAllister</u>, 184 <u>N.J.</u> 17, 26, 32-33 (2005) (concluding that New Jersey Constitution, unlike Federal Constitution, protects interest in privacy of bank records); <u>N.J. Coalition Against War in the Middle E. v. J.M.B. Realty Corp.</u>, 138 <u>N.J.</u> 326, 353 (1994) (providing broader free speech rights in shopping malls under New Jersey Constitution than provided by Federal Constitution), <u>cert. denied sub nom.</u>, <u>Short Hills Assocs. v. N.J. Coalition Against War in the Middle E.</u>, 516 <u>U.S.</u> 812, 116 <u>S. Ct.</u> 62, 133 <u>L. Ed.</u> 2d 25 (1995). Here, in contrast, the majority will not honor one of the most basic of rights in our Federal Constitution -- the right of this defendant to have a jury trial. A similarly situated defendant in any other state would not have been compelled to stand trial before a judge.

A jury trial may be inefficient and costly, but it is the embodiment of our democratic ethos and the process chosen by the Founders for the resolution of serious offenses. By any measure, under <u>Blanton</u>, a third or subsequent DWI conviction results in the imposition of a jail term and onerous license and financial penalties that trigger the Sixth Amendment right to a jury trial. Because defendant was denied his right to a jury trial, I respectfully dissent.

12

## Dissent Appendix

| State | Number of DWI[2] Offenses Needed to Trigger Right to Jury Trial | Citations[3] |
|---|---|---|
| Alabama | 1 | See Ala. Code §§ 32-5A-3, 32-5A-191; Ala. R. Crim. P. 18.1. |
| Alaska | 1 | See Alaska Const. art. 1, § 11; Alaska Stat. § 28.35.030. |
| Arizona | 1 | See Ariz. Rev. Stat. 28-1381(A), (F). |
| Arkansas | 1 | See Ark. Const. art. 2, § 7; Ark. Code Ann. 5-65-103; 5-65-111. |
| California | 1 | See Cal. Const. Art. 1, § 16; Cal. Penal Code § 689; Cal. Veh. Code § 23152. |
| Colorado | 1 | See Colo. Rev. Stat. 16-10-109, 42-4-1301. |
| Connecticut | 2 | See Conn. Const. art. 1, § 19; Conn. Gen. Stat. § 14-227a. |
| Delaware | 1 | See Del. Code Ann. tit. 21, § 4177(a), (d)(1). |
| Florida | 1 | See Fla. Stat. §§ 316.193, 316.1934(4). |
| Georgia | 1 | See Ga. Code Ann. §§ 16-1-3(9), 17-9-2, 40-6-391. |
| Hawaii | 4 | See Haw. Rev. Stat. Ann. §§ 291E-61, 291E.61.5. |
| Idaho | 1 | See Idaho Code Ann. §§ 18-8004, 18-8005, 19-1902; State v. Wheeler, 753 P.2d 833, 836-37 (Idaho 1988). |
| Illinois | 1 | See 625 Ill. Comp. Stat. Ann. § 5/11-501, 725 Ill. Comp. Stat. Ann. § 5/103-6. |

[2] As mentioned by the majority, states vary in the exact name given to the offense of driving while under the influence of alcohol.  I use "DWI" for the sake of simplicity.

[3] In those states where the statutory scheme imposes a penalty of greater than six months' imprisonment, the state is required to provide a jury trial.  Blanton, supra, 489 U.S. at 542, 109 S. Ct. at 1293, 103 L. Ed. 2d at 556.

13

| Indiana | 1 | See Ind. Code Ann. §§ 9-30-5-2, 35-31.5-2-75, 35-37-1-2; Ind. R. Crim P. 22. |
| Iowa | 1 | See Iowa Code § 321J.2. |
| Kansas | 1 | See Kan. Stat. Ann. §§ 8-1567, 22-3404. |
| Kentucky | 1 | See Ky. Rev. Stat. §§ 29A.270(1), 189A.010. |
| Louisiana | 3 | See La. Rev. Stat. Ann. § 14:98.3(A)(1); State v. Montgomery, 195 So. 2d 285, 287 (La. 1967). |
| Maine | 1 | See Me. Const. art. 1, § 6; Me. Rev. Stat. tit. 29-A § 2411. |
| Maryland | 1 | See Md. Crim. Pra. Code Ann. § 6-101; Md. Transp. Code Ann. §§ 21-902; 27-101(c)(22). |
| Massachusetts | 1 | See Mass. Ann. Laws ch. 90, § 24(1)(a)(1). |
| Michigan | 1 | See Mich. Comp. Laws Serv. § 257.625(1), (18). |
| Minnesota | 1 | See Minn. Stat. §§ 169A.20, 169A.27, 609.02(3); Minn. R. Crim. P. 26.01. |
| Mississippi | 2 | See Miss. Code Ann. § 63-11-30; Harkins v. State, 735 So. 2d 317, 318-19 (Miss. 1999). |
| Missouri | 1 | See Mo. Rev. Stat. §§ 543.200, 558.011(1)(5), 577.010, 577.023(2). |
| Montana | 1 | See Mont. Code Ann. §§ 46-17-201, 61-8-104, 61-8-401. |
| Nebraska | 1 | See Neb. Rev. Stat. Ann. §§ 25-2705, 28-106(1), 60-6,196, 60-6.196.03. |
| Nevada | 3 | See Nev. Rev. State Ann. § 484C.400; State v. Smith, 672 P.2d 631 (Nev. 1983). |
| New Hampshire | 2 | See N.H. Rev. Stat. Ann. § 265-A:18, 625:9(IV)(6); In re Senate, 608 A.2d 202, 204-05 (N.H. 1992). |
| New Mexico | 2 | See N.M. Stat. Ann. § 66-8-102; State v. Grace, 993 P.2d 93, 95 (N.M. Ct. App. 1999). |
| New York | 1 | See N.Y. Veh. & Traf. Law §§ 1192, 1193. |
| North Carolina | 1 | See N.C. Gen Stat. §§ 15A-1201, 20-138.1, 20-179. |

| | | |
|---|---|---|
| North Dakota | 1 | See N.D. Cent. Code §§ 29-01-06, 39-08-01; N.D.R. Crim. P. Rule 23(b)(2). |
| Ohio | 1 | See Ohio Rev. Code Ann. §§ 2901.02, 2945.17, 4511.19. |
| Oklahoma | 1 | See Okla. Const. art. II, § 19; Okla. St. tit. 47, § 11-902. |
| Oregon | 1 | See Ore. Rev. Stat. §§ 161.615(1), 813.010; Brown v. Multnomah Cnty. Dist. Court, 570 P.2d 52 (Ore. 1977). |
| Pennsylvania | 3 | See 18 Pa. Cons. Stat. § 1104; 75 Pa. Cons. Stat. §§ 3802, 3803, 3804. |
| Rhode Island | 1 | See R.I. Gen Law § 31-27-2(d)(1)(i). |
| South Carolina | 1 | See S.C. Code Ann. §§ 56-5-2930, 56-5-2935. |
| South Dakota | 1 | See Parham v. Municipal Court, 199 N.W.2d 501, 505 (S.D. 1972). |
| Tennessee | 1 | See Tenn. Code Ann. §§ 55-10-401, 55-10-402. |
| Texas | 1 | See Tex. Penal Code Ann. § 49.04; Chaouachi v. State, 870 S.W.2d 88, 90 (Tex. Ct. App. 1993). |
| Utah | 1 | See State v. Nuttall, 611 P.2d 722, 725 (Utah 1980). |
| Vermont | 1 | See Vt. Stat. Ann. tit. 23, §§ 1201, 1210. |
| Virginia | 1 | See Va. Code Ann. §§ 18.2-270, 19.2-258. |
| Washington | 1 | See Wash. Rev. Code §§ 46.61.502(1), 46.61.502(5), 46.61.5055(1); Pasco v. Mace, 653 P.2d 618, 625 (Wash. 1982). |
| West Virginia | 1 | See W. Va. Code § 17C:5-2(e); Hendershot v. Hendershot, 263 S.E.2d 90, 95 (W. Va. 1980). |
| Wisconsin | 2 | See Wis. Stat. §§ 346.63, 346.65, 939.12; State v. Slowe, 284 N.W. 4, 5-6 (Wis. 1939). |
| Wyoming | 1 | See Casper v. Cheatham, 739 P.2d 1222, 1223 (Wyo. 1987). |
| District of Columbia | 2 | D.C. Code §§ 16-705, 50-2206.11, 50-2206.13. |

SUPREME COURT OF NEW JERSEY

NO.   A-42                         SEPTEMBER TERM 2014
ON CERTIFICATION TO   Appellate Division, Superior Court


STATE OF NEW JERSEY,

        Plaintiff-Respondent,

              v.

JAMES R. DENELSBECK,

        Defendant-Appellant.




DECIDED              May 12, 2016
                 Chief Justice Rabner                  PRESIDING
OPINION BY        Judge Cuff (temporarily assigned)
CONCURRING/DISSENTING OPINION BY
DISSENTING OPINION BY    Justice Albin


| CHECKLIST | AFFIRM | DISSENT |
|-----------|--------|---------|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | | X |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | ------------------ | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 5 | 1 |